UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20008 CR-MOORE

/TORRES

18 U.S.C. § 1349
18 U.S.C. § 1344
18 U.S.C. § 2
18 U.S.C. § 982(a)(2)(A)

UNITED STATES OF AMERICA

vs.

DOMENICO RABUFFO,
    a/k/a "Dom Rabuffo,"
MAE RABUFFO,
DIANE M. HAYDUK,
RAYMOND E. OLIVIER,
    a/k/a "Ray Olivier,"
CURTIS ALLEN DAVIS,
VICTOR MIGUEL VIDAL, and
LAZARO JESUS PEREZ,

           Defendants.

_____/

FILED by _____ D.C.

JAN 07 2014

STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S. D. of FLA. – MIAMI

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At various times relevant to this Indictment:

### The Lenders

1.    Bank of America, N.A. ("Bank of America") was a financial institution with offices located throughout the United States, including in the State of Florida, whose accounts were insured by the Federal Deposit Insurance Corporation ("FDIC").

2.      Regions Bank d/b/a Regions Mortgage ("Regions Bank") was a financial institution with offices located throughout the United States, including in the State of Florida, whose accounts were insured by the FDIC.

3.      SunTrust Mortgage, Inc. ("SunTrust Mortgage") was a wholly-owned subsidiary of SunTrust Bank ("SunTrust Bank"), a financial institution with offices located throughout the United States, including in the State of Florida, whose accounts were insured by the FDIC.

4.      Wachovia Mortgage Corporation ("Wachovia Mortgage") was a wholly-owned subsidiary of Wachovia Bank, N.A. ("Wachovia Bank"), a financial institution with offices located throughout the United States, including in the State of Florida, whose accounts were insured by the FDIC. Wachovia Bank is now known as Wells Fargo Bank.

### Definitions

5.      The term "cash-to-close" refers to the monetary obligations to be met by the buyer, in order for the closing of a real estate transaction to be completed.

6.      The term "closing" refers to the legal event at which the transfer of an interest in real estate from seller to buyer, or buyer/borrower to lender, formally took place, as well as the point at which funds were transferred between the various parties, such as from the lending institution to the buyer or to the seller on the buyer's behalf, which transfer was often accomplished by temporarily passing the funds through an intermediary referred to as a "settlement agent," "closing agent," or "title company."

7.      The term "construction loan" refers to a mortgage loan that financed the improvement of vacant real estate, by, for example, the construction of a house on the property.

8.      The terms "deposit," "earnest money," and "earnest money deposit," refer to the monetary obligation to be met by the buyer of real estate to indicate the buyer's intention to

purchase a particular real estate property, and in order for the closing of a real estate transaction to be completed.

9.     A HUD-1 Settlement Statement ("HUD-1 Statement") is a standard form required to be executed for the closing of all real estate transactions, including mortgage transactions. The HUD-1 Statement itemized all aspects of the closing for the lender, including any payments to be made by the buyer/borrower, money due to the seller, and any fees paid to third parties in connection with the closing.

10.     The term "lenders" refers collectively to the entities set forth in the preceding paragraphs 1, 2, 3, and 4.

11.     The term "lot loan" refers to a mortgage loan that financed the purchase of vacant, unimproved real estate.

12.     The term "mortgage" refers to a loan for the purchase or improvement of real estate, usually having specified payment periods and interest rates, whereby the borrower/mortgagor gave the lender/mortgagee a lien on the property as collateral security for the loan.

13.     The term "straw buyer" and/or "straw purchaser" refers to an individual who, generally in exchange for a fee, allowed his or her identity and credit to be used in the purchase and financing of residential property.

### The Entities

14.     P & S, P.A. ("P & S") was a North Carolina law firm with its office in Sylva, Jackson County, North Carolina.

15.     M and R Mountain Properties, Inc. was a North Carolina corporation with its registered office in Sylva, North Carolina.

3

16.     MAR Estates, LLC was a North Carolina limited liability company with its registered office in Sylva, Jackson County, North Carolina.

17.     Spring Mountain Estates, Inc. was a North Carolina corporation with its principal office in Cashiers, Jackson County, North Carolina.

18.     Wade Hampton Horizons, Inc. was a North Carolina corporation with its principal office in Cashiers, Jackson County, North Carolina.

19.     MOD Development Construction, Inc. was a Florida corporation with its principal office located at 1633 Tigertail Avenue, Miami, Florida.

20.     MOD Development Engineering, Inc. was a Florida corporation with its principal office located at 1633 Tigertail Avenue, Miami, Florida.

21.     Spring Development Construction, Inc. was a Florida corporation with its principal office located at 1633 Tigertail Avenue, Miami, Florida.

22.     MAR Construction Communications, Inc. was a Florida corporation with its principal office located at 2887 N.E. 35th Court, Fort Lauderdale, Florida.

23.     Estates of Lake View, Inc. was a Florida corporation with its principal office located at 1633 Tigertail Avenue, Miami, Florida.

24.     Glenville Mountain Estates, Inc. was a Florida corporation with its principal office located at 1633 Tigertail Avenue, Miami, Florida.

25.     Mountain Estates Management, Inc. was a Florida corporation with its principal office located at 1633 Tigertail Avenue, Miami, Florida.

26.     Mountain NC, Inc. was a Florida corporation with its principal office located at 1633 Tigertail Avenue, Miami, Florida.

27.     Avant Garde Engineering, Inc. was a Florida corporation with its principal office

4

in Land O' Lakes, Florida.

28.     Calcour Development, LLC was a Florida limited liability company with its principal office in Land O' Lakes, Florida.

29.     Executive Mortgage & Investments, Inc. was a Florida corporation with its principal office in Tampa, Florida.

30.     Lazaro J. Perez, PLLC was a Florida limited liability company with its principal office in Miami, Florida.

### Hampton Springs

31.     "Hampton Springs" was a purported residential property development located in Cashiers, Jackson County, North Carolina.  Hampton Springs comprised three subdivisions: Hampton Springs Resort; Mae Rabuffo Subdivision No. 1, and Mae Rabuffo Subdivision No. 2.

### The Defendants

32.     Defendant **DOMENICO RABUFFO, a/k/a "Dom Rabuffo,"** an individual who resided in Miami-Dade County, Florida, was the chief developer and promoter of Hampton Springs, and posed as an "Investment Manager." **DOMENICO RABUFFO** controlled Wade Hampton Horizons, Inc. and Spring Mountain Estates, Inc. and bank accounts in the names of those entities.  **DOMENICO RABUFFO** was the sole director of: MOD Development Construction, Inc.; MOD Development Engineering, Inc.; Spring Development Construction, Inc.; Estates of Lake View, Inc.; Glenville Mountain Estates, Inc.; Mountain Estates Management, Inc.; and Mountain NC, Inc. **DOMENICO RABUFFO** had signing authority on bank accounts in the names of those entities and MAR Estates, LLC. **DOMENICO RABUFFO** operated from his home office located at 1633 Tigertail Avenue, Miami, Florida.

33.     Defendant **MAE RABUFFO**, an individual who resided in Broward County,

5

Florida, and New York, was a developer of Hampton Springs, and posed as an "Investment Manager." **MAE RABUFFO** was the member and manager of MAR Estates, LLC, the sole director of MAR Construction Communications, Inc., and the President of M and R Mountain Properties, Inc. **MAE RABUFFO** had signing authority on bank accounts in the names of those entities.

34.     Defendant **DIANE M. HAYDUK**, an individual who resided in Miami-Dade County, Florida, was a promoter of Hampton Springs, and posed as **DOMENICO RABUFFO's** and **MAE RABUFFO's** executive assistant and secretary. **HAYDUK** was the registered agent of MOD Development Engineering, Inc.; Spring Development Construction, Inc.; Estates of Lake View, Inc.; Glenville Mountain Estates, Inc.; Mountain Estates Management, Inc.; and Mountain NC, Inc. **HAYDUK** had signing authority on bank accounts in the names of Spring Mountain Estates, Inc. and Estates of Lake View, Inc. **HAYDUK** operated out of **DOMENICO RABUFFO's** home office, located at 1633 Tigertail Avenue, Miami, Florida.

35.     Defendant **RAYMOND E. OLIVIER, a/k/a "Ray Olivier,"** an individual who resided in Pasco County, Florida, and Jackson County, North Carolina, was the president and a director of Avant Garde Engineering, Inc., and the registered agent of Calcour Development, LLC. **OLIVIER** was a developer and promoter of Hampton Springs.

36.     Defendant **CURTIS ALLEN DAVIS**, an individual who resided in Hillsborough County, Florida, was a promoter of Hampton Springs. **DAVIS** was an owner, officer, and the registered agent of Executive Mortgage & Investments, Inc.

37.     Defendant **VICTOR MIGUEL VIDAL**, an individual who resided in Miami-Dade County, Florida, was a loan officer for SunTrust Mortgage.

38.     Defendant **LAZARO JESUS PEREZ**, an individual who resided in Miami-Dade

6

County, Florida, was the manager and registered agent of Lazaro J. Perez, PLLC.

## COUNT 1
### CONSPIRACY TO COMMIT BANK FRAUD AND WIRE FRAUD
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 38 of the General Allegations section of this Indictment are re-alleged and fully incorporated herein by reference.

2.     From in or around 2003, through in or around 2008, the exact dates being unknown to the Grand Jury, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**DOMENICO RABUFFO,**
**a/k/a "Dom Rabuffo,"**
**MAE RABUFFO,**
**DIANE M. HAYDUK,**
**RAYMOND E. OLIVIER,**
**a/k/a "Ray Olivier,"**
**CURTIS ALLEN DAVIS,**
**VICTOR MIGUEL VIDAL, and**
**LAZARO JESUS PEREZ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree together and with other persons known and unknown to the Grand Jury:

(a)     to knowingly, and with intent to defraud, execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, including Bank of America, Regions Bank, SunTrust Bank, and Wachovia Bank, which scheme and artifice would employ a material falsehood, and to knowingly, and with intent to defraud, execute, and cause the execution of, a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of, one or more financial institutions, by means of false and fraudulent pretenses, representations, and promises relating to a material fact, in violation of Title 18, United States

7

Code, Sections 1344(1) and (2); and

(b)     to knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and transmitting and causing to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, for the purpose of executing the scheme and artifice, and affecting a financial institution, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.     It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) recruiting and using straw buyers and unqualified buyers to finance the purchase and improvement of building lots in Hampton Springs; (b) using building lots that were subdivided into adjacent halves to enable straw buyers and unqualified buyers to borrow money from different lenders for the purchase of each half lot, without disclosing the debt the straw buyer and unqualified buyer would incur to purchase the adjacent half lot; (c) causing false and fraudulent mortgage applications, and other related loan documents, to be submitted to the lenders, thereby inducing the lenders to make mortgage loans to straw buyers and unqualified buyers for the purchase and improvement of lots in Hampton Springs; (d) failing to disclose to the lenders and concealing that the straw buyers and unqualified buyers did not pay their earnest money deposits, cash-to-close, and monthly mortgage payments; and (e) misappropriating the straw buyers' and unqualified buyers' mortgage proceeds for their own use and benefit and to further the fraudulent scheme and artifice.

## MANNER AND MEANS OF CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. Beginning in or around 2003, **DOMENICO RABUFFO** and **MAE RABUFFO** acquired *de facto* ownership and control of Hampton Springs. **DOMENICO RABUFFO** and **MAE RABUFFO** exercised their ownership and control of Hampton Springs through North Carolina legal entities, including Wade Hampton Horizons, Inc., Spring Mountain Estates, Inc., MAR Estates, LLC, and M and R Mountain Properties, Inc.

5. **DOMENICO RABUFFO** and **MAE RABUFFO** organized Hampton Springs to include three subdivisions: Hampton Springs Resort; Mae Rabuffo Subdivision No. 1; and Mae Rabuffo Subdivision No. 2. The Hampton Springs Resort subdivision was divided into numbered lots, each of which was further subdivided into adjacent halves designated as A and B. The Mae Rabuffo Subdivisions were divided into lettered lots.

6. **DOMENICO RABUFFO, DIANE M. HAYDUK, RAYMOND E. OLIVIER,** and **CURTIS ALLEN DAVIS** recruited and caused to be recruited straw buyers and unqualified buyers to act as qualifying mortgage applicants, in order to fraudulently finance, first, the purchase of building lots, and later, the improvement of building lots in Hampton Springs. **DOMENICO RABUFFO, HAYDUK, OLIVIER,** and **DAVIS** promoted the fraud scheme to prospective straw buyers as a "real estate investment opportunity," whereby straw buyers could earn fees and profits by posing as the purchasers of building lots in Hampton Springs and obtaining mortgage lot and construction loans from banks. The defendants and their co-conspirators induced individuals to act as straw buyers, by explaining that the individuals could purchase building lots in Hampton Springs using mortgage loans, at no out-of-pocket cost, and

9

that:

- **DOMENICO RABUFFO** would pay the straw buyers' earnest money deposits, cash-to-close, and their monthly mortgage payments;

- **DOMENICO RABUFFO** would pay the straw buyers $12,500 for each building lot (consisting of two half lots) that they purchased, $12,500 for each year the mortgage loan remained outstanding, and $12,500 if the straw purchaser borrowed a construction loan for the lot; and

- The straw buyers would share in any profit from the sale of the improved lot.

7.     **DOMENICO RABUFFO, MAE RABUFFO, DIANE M. HAYDUK, RAYMOND E. OLIVIER,** and **CURTIS ALLEN DAVIS** recruited and caused to be recruited the following straw buyers, among others, who financed their purchase of building lots in Hampton Springs through the lenders: J.A.; C.A. and S.A.; F.B.; K.B. and M.B.; G.B.; D.B., S.B., and S.B.; E.B. and L.B.; M.B.; N.B; D.B.; G.C.; K.C.; D.C. and C.C.; R.C. and L.C.; D.D. and C.D.; K.D.; K.D. and J.D.; R.D.; E.G. and T.G.; J.G. and C.G.; L.G-T.; M.G.; S.G.; A.J. and P.J.; R.J. and A.J.; T.K.; E.M.; Z.M.; N.M.; J.M.; F.M and L.M.; M.M. and K.M.; P.M.; L.N.; A.N. and C.N.; S.O. and G.O.; E.R. and E.R.; B.R.; H.R.; R.R.; S.R. and A.R.; C.S.; G.S. and M.S.; P.S. and M.S.; C.S.; Y.S. and X.M.; R.S.; A.S.; L.S.; J.S.; A.T.; B.T. and M.T.; J.T. and A.T.; C.T. and G.T.; Y.W. and R.W.; R.W. and J.W.; J.W.; and S.W. and R.W.

8.     **DOMENICO RABUFFO, MAE RABUFFO, DIANE M. HAYDUK, RAYMOND E. OLIVIER, CURTIS ALLEN DAVIS, VICTOR MIGUEL VIDAL,** and **LAZARO JESUS PEREZ** prepared and caused to be prepared false and fraudulent mortgage loan applications for lot loans, and other related documents on behalf of the straw buyers. The lot loan applications and related documents that were submitted to the lenders contained

fraudulent misrepresentations relating to: the straw buyers' intent to occupy the Hampton Springs building lots; the straw buyers' employment, income, assets and liabilities; the straw buyers' payment of earnest money deposits and cash-to-close; and other information material to the straw buyers' qualifications to borrow money.

9. The subdivision of the Hampton Springs building lots into half lots enabled straw buyers to finance their purchase of each half lot through different lenders without disclosing the loan on the adjacent half lot. **DOMENICO RABUFFO, MAE RABUFFO, DIANE M. HAYDUK,** and **RAYMOND E. OLIVIER** caused certain straw buyers to submit loan applications for each half lot to different lenders. Those loan applications did not disclose the debt the straw purchaser would incur for the adjacent lot.

10. **DOMENICO RABUFFO, RAYMOND E. OLIVIER,** and **VICTOR MIGUEL VIDAL** caused certain straw buyers' mortgage loan applications to contain false and fraudulent declarations that the straw buyers were employed by Avant Garde Engineering, Inc. or Calcour Development, LLC. Certain of those fraudulent applications also provided telephone numbers used by **RAYMOND E. OLIVIER** as the phone number for Avant Garde Engineering, Inc. and Calcour Development, LLC. **OLIVIER** would then provide a false and fraudulent verification of employment when the lender called to confirm the straw buyer's supposed employment. In this manner, **OLIVIER** provided false and fraudulent verifications of employment for straw buyers to SunTrust Mortgage and Wachovia Mortgage.

11. **DOMENICO RABUFFO, CURTIS ALLEN DAVIS,** and **VICTOR MIGUEL VIDAL** caused a straw buyer's mortgage loan application to falsely and fraudulently declare that the straw buyer was employed by Executive Mortgage & Investments, Inc. The loan application provided **DAVIS's** telephone number at Executive Mortgage & Investments, Inc. to allow

11

**DAVIS** to provide a false and fraudulent verification of employment when the lender called to confirm the straw buyer's supposed employment. In this manner, **DAVIS** provided a false and fraudulent verification of employment for a straw buyer to SunTrust Mortgage.

12. Typically, when a straw buyer agreed to purchase lots in Hampton Springs, **DIANE M. HAYDUK** and **DOMENICO RABUFFO** opened a joint checking account in the names of the straw buyer and **DOMENICO RABUFFO**. In many instances and in furtherance of the fraud, **DOMENICO RABUFFO** and **HAYDUK** deposited funds in the newly-created joint account, and thereafter caused the joint account balance to be disclosed as an asset on the false and fraudulent loan application the straw buyer submitted to the lender. For most straw buyers, **DOMENICO RABUFFO** and **HAYDUK** funded the joint accounts and used them to pay earnest money deposits, cash-to-close obligations, and monthly payments on lot loans and construction loans. In this way, **DOMENICO RABUFFO** and **HAYDUK** used the joint accounts to conceal from the lenders the fact that the defendants were paying the straw buyers' earnest money deposits, cash-to-close, and monthly mortgage payments, and to make it appear that the payments were being made by the straw buyers.

13. In or around 2007, when **VICTOR MIGUEL VIDAL** was a loan officer at SunTrust Mortgage, he asked **LAZARO JESUS PEREZ** to provide false and fictitious letters in support of loan applications for lot loans and a construction loan, submitted by certain straw buyers in Hampton Springs. **PEREZ** provided **VIDAL** with letters for several straw buyers, including L.S., K.C., and L.G-T. **PEREZ's** letters were written on the letterhead of his company, "Lazaro J. Perez, PLLC, Tax Accountant ♦ Juris Doctor." In the letters, **PEREZ** falsely and fraudulently posed as the straw buyer's accountant, falsely and fraudulently declared that he had reviewed the straw buyer's tax returns or other financial information, and

12

misrepresented the straw buyer's qualifications for the loan.

14.     **DOMENICO RABUFFO, MAE RABUFFO, DIANE M. HAYDUK, VICTOR MIGUEL VIDAL,** and their co-conspirators caused to be prepared, and submitted to lenders, false and fraudulent HUD-1 Statements, which falsely declared that the straw buyers supplied their own earnest money deposits and/or cash-to-close at or prior to closing. **MAE RABUFFO** signed HUD-1 Statements wherein she falsely and fraudulently declared that straw buyers paid earnest money deposits and cash-to-close for the purchase of building lots from MAR Estates, LLC, and M and R Mountain Properties, Inc.

15.     Approximately one year after straw buyers obtained lot loans for building lots in Hampton Springs, **DOMENICO RABUFFO, MAE RABUFFO, DIANE M. HAYDUK, RAYMOND E. OLIVIER, CURTIS ALLEN DAVIS, VICTOR MIGUEL VIDAL,** and **LAZARO JESUS PEREZ** prepared and caused to be prepared false and fraudulent mortgage loan applications for construction loans for the building lots, and other related documents on behalf of the straw buyers. The construction loan applications and related documents that were submitted to the lenders contained fraudulent misrepresentations relating to: the straw buyers' intent to occupy the building lots; the straw buyers' employment, income, assets and liabilities; the straw buyers' payment of cash-to-close; and other information material to the straw buyers' qualifications to borrow money.

16.     **DIANE M. HAYDUK** was responsible for closing lot loans and construction loans for Hampton Springs straw buyers living in South Florida. **HAYDUK** presented false and fraudulent loan applications and other loan documents to the straw buyers for their signature, and collected the signed documents for submission to the lenders. **HAYDUK** was a notary public and certified the authenticity of straw buyers' signatures on certain loan documents such as deeds

13

of trust and affidavits. In furtherance of the conspiracy, **HAYDUK** on occasion: (1) falsely and fraudulently certified that straw buyers signed documents in her presence when the straw buyers were absent; (2) falsely and fraudulently certified forged signatures; and (3) falsely and fraudulently certified that documents were signed on certain dates.

17. The defendants used the false and fraudulent loan applications and other documents to induce the lenders to make lot loans and construction loans to straw buyers in Hampton Springs.

18. Having received the false and fraudulent loan applications and related documents submitted by the defendants, the lenders approved the false and fraudulent loan requests submitted by the defendants and sent the loan proceeds to the lenders' settlement agent, P & S, for distribution at the closing of the lot loans and construction loans. In total, the lenders advanced approximately $49.6 million in loan proceeds to P & S.

19. During the course of the conspiracy, **VICTOR MIGUEL VIDAL** sought and obtained SunTrust Mortgage's approval for seven (7) lot loans totaling approximately $3.9 million, and twenty two (22) construction loans totaling approximately $33 million, for straw buyers in Hampton Springs. SunTrust Bank advanced approximately $16.5 million on the fraudulent lot and construction loans sponsored by **VIDAL**.

20. P & S disbursed the lot loan proceeds to Wade Hampton Horizons, Inc., Spring Mountain Estates, Inc., MAR Estates, LLC, and M and R Mountain Properties, Inc. **DOMENICO RABUFFO** and **MAE RABUFFO** used Wade Hampton Horizons, Inc., Spring Mountain Estates, Inc., and MAR Estates, LLC, as conduits to divert the lot loan proceeds to various entities they controlled, including: MOD Development Construction, Inc.; MOD Development Engineering, Inc.; Spring Development Engineering, Inc.; MAR Construction

14

Communications, Inc.; Estates of Lake View, Inc., Glenville Mountain Estates, Inc., Mountain Estates Management, Inc.; and Mountain NC, Inc.

21.     P & S disbursed SunTrust Bank construction loan proceeds to a Wachovia Bank account controlled by **DOMENICO RABUFFO**. **DOMENICO RABUFFO** then diverted the construction draws advanced by SunTrust Bank to the joint accounts that **DOMENICO RABUFFO** and **DIANE M. HAYDUK** opened in the names of the straw buyer borrowers. **DOMENICO RABUFFO** and **HAYDUK** used the proceeds deposited in the joint accounts to make the monthly payments on the construction loans, and misappropriated construction loan proceeds for the use and benefit of themselves and their co-conspirators.

22.     Ultimately, **DOMENICO RABUFFO, DIANE M. HAYDUK,** and their co-conspirators stopped making the straw buyers' mortgage payments, causing the default and foreclosure of various lot loans and all of the construction loans for Hampton Springs, resulting in substantial losses to the lenders.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 2-15
### BANK FRAUD
### (18 U.S.C. § 1344)

1.     Paragraphs 1 through 38 of the General Allegations section of this Indictment are re-alleged and incorporated fully herein by reference.

2.     From in or around 2003, through in or around 2008, the exact dates being unknown to the Grand Jury, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**DOMENICO RABUFFO,**
**a/k/a "Dom Rabuffo,"**
**MAE RABUFFO,**
**DIANE M. HAYDUK,**

15

RAYMOND E. OLIVIER,
a/k/a "Ray Olivier,"
CURTIS ALLEN DAVIS,
VICTOR MIGUEL VIDAL, and
LAZARO JESUS PEREZ,

did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to defraud one or more financial institutions, including Bank of America, Regions Bank, SunTrust Bank, and Wachovia Bank, which scheme and artifice employed a material falsehood, and did knowingly, and with intent to defraud, execute, and attempt to execute, and cause the execution of, a scheme and artifice to obtain moneys and funds owned by, and under the custody and control of, one or more said financial institutions by means of false and fraudulent pretenses, representations, and promises, relating to a material fact, in violation of Title 18, United States Code, Sections 1344(1) and (2), and 2.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was the purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things: (a) recruiting and using straw buyers and unqualified buyers to finance the purchase and improvement of building lots in Hampton Springs; (b) using building lots that were subdivided into adjacent halves to enable straw buyers and unqualified buyers to borrow money from different lenders for the purchase of each half lot, without disclosing the debt the straw buyer and unqualified buyer would incur to purchase the adjacent half lot; (c) causing false and fraudulent mortgage applications, and other related loan documents, to be submitted to the lenders, thereby inducing the lenders to make mortgage loans to straw buyers and unqualified buyers for the purchase and improvement of lots in Hampton Springs; (d) failing to disclose to the lenders and concealing that the straw buyers and unqualified buyers did not pay their earnest money deposits, cash-to-close, and monthly

16

mortgage payments; and (e) misappropriating the straw buyers' and unqualified buyers' mortgage proceeds for their own use and benefit and to further the fraudulent scheme and artifice.

## THE SCHEME AND ARTIFICE

4.     The Manner and Means section of Count 1 of the Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## EXECUTION OF THE SCHEME AND ARTIFICE

5.     On or about the dates specified below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants, as specified below, did execute, and cause the execution of, the aforesaid scheme and artifice to defraud financial institutions, and obtain moneys and funds owned by and under the custody and control of financial institutions, as more particularly described below:

| | | | |
|---|---|---|---|
| 2 | 4/21/2006 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," DIANE M. HAYDUK, and RAYMOND E. OLIVIER, a/k/a "Ray Olivier"** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of G.B. to Bank of America, for the purpose of obtaining a lot loan in the amount of approximately $243,750, for the purchase of Lot 39B, Hampton Springs Resort, Cashiers, NC. |

| 3 | 4/21/2006 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," DIANE M. HAYDUK, and RAYMOND E. OLIVIER, a/k/a "Ray Olivier"** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of K.B. to Bank of America, for the purpose of obtaining a lot loan in the amount of approximately $243,750, for the purchase of Lot 36B, Hampton Springs Resort, Cashiers, NC. |
|---|---|---|---|
| 4 | 8/31/2006 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," DIANE M. HAYDUK, and RAYMOND E. OLIVIER, a/k/a "Ray Olivier"** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of R.R. to Wachovia Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $243,750, funded by Wachovia Bank, for the purchase of Lot 43B, Hampton Springs Resort, Cashiers, NC. |
| 5 | 3/2/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," MAE RABUFFO, and DIANE M. HAYDUK** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of K.D. to Wachovia Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $243,750, funded by Wachovia Bank, for the purchase of Lot 53A, Hampton Springs Resort, Cashiers, NC. |

| 6 | 6/11/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," MAE RABUFFO, DIANE M. HAYDUK, VICTOR MIGUEL VIDAL, and LAZARO JESUS PEREZ** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of L.S. to SunTrust Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $468,750, funded by SunTrust Bank, for the purchase of Lot N, Mae Rabuffo Subdivision No. 2, Cashiers, NC. |
| 7 | 6/29/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," DIANE M. HAYDUK, RAYMOND E. OLIVIER, a/k/a "Ray Olivier," and VICTOR MIGUEL VIDAL** | Submission of fraudulent mortgage loan application, closing, and related documents in the names of K.B. and M.B. to SunTrust Mortgage, for the purpose of obtaining a construction loan in the amount of approximately $1.5 million, funded by SunTrust Bank, for Lot 36, Hampton Springs Resort, Cashiers, NC. |
| 8 | 7/21/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," MAE RABUFFO, VICTOR MIGUEL VIDAL, and LAZARO JESUS PEREZ** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of K.C. to SunTrust Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $487,500, funded by SunTrust Bank, for the purchase of Lot U, Mae Rabuffo Subdivision No. 2, Cashiers, NC. |

| | | | |
|---|---|---|---|
| 9 | 7/31/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," MAE RABUFFO, and RAYMOND E. OLIVIER, a/k/a "Ray Olivier," VICTOR MIGUEL VIDAL, and LAZARO JESUS PEREZ** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of L.G-T. to SunTrust Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $487,500, funded by SunTrust Bank, for the purchase of Lot F, Mae Rabuffo Subdivision No. 1, Cashiers, NC. |
| 10 | 7/31/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," MAE RABUFFO, DIANE M. HAYDUK, CURTIS ALLEN DAVIS, and VICTOR MIGUEL VIDAL** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of R.S. to SunTrust Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $487,500, funded by SunTrust Bank, for the purchase of Lot E, Mae Rabuffo Subdivision No. 1, Cashiers, NC. |
| 11 | 7/31/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," MAE RABUFFO, DIANE M. HAYDUK, RAYMOND E. OLIVIER, a/k/a "Ray Olivier," and VICTOR MIGUEL VIDAL** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of A.S. to SunTrust Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $487,500, funded by SunTrust Bank, for the purchase of Lot R, Mae Rabuffo Subdivision No. 2, Cashiers, NC. |

| | | | |
|---|---|---|---|
| 12 | 7/31/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," DIANE M. HAYDUK, RAYMOND E. OLIVIER, a/k/a "Ray Olivier," and VICTOR MIGUEL VIDAL** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of G.B. to SunTrust Mortgage, for the purpose of obtaining a construction loan in the amount of approximately $1.5 million, funded by SunTrust Bank, for Lot 39, Hampton Springs Resort, Cashiers, NC. |
| 13 | 8/10/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," and VICTOR MIGUEL VIDAL** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of R.R. to SunTrust Mortgage, for the purpose of obtaining a construction loan in the amount of approximately $1.5 million, funded by SunTrust Bank, for Lot 42, Hampton Springs Resort, Cashiers, NC. |
| 14 | 8/31/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," DIANE M. HAYDUK, RAYMOND E. OLIVIER, a/k/a "Ray Olivier," CURTIS ALLEN DAVIS, and VICTOR MIGUEL VIDAL** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of K.D. to SunTrust Mortgage, for the purpose of obtaining a construction loan in the amount of approximately $1.5 million, funded by SunTrust Bank, for Lot 11, Hampton Springs Resort, Cashiers, NC. |

| | | | |
|---|---|---|---|
| 15 | 10/5/2007 | **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," and MAE RABUFFO** | Submission of fraudulent mortgage loan application, closing, and related documents in the name of R.D. to Regions Bank d/b/a Regions Mortgage, for the purpose of obtaining a lot loan in the amount of approximately $487,500, for the purchase of Lot B, Mae Rabuffo Subdivision No. 1, Cashiers, NC. |

In violation of Title 18, United States Code, Sections 1344(1) and (2), and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which each of the defendants, **DOMENICO RABUFFO, a/k/a "Dom Rabuffo," MAE RABUFFO, DIANE M. HAYDUK, RAYMOND E. OLIVIER, a/k/a "Ray Olivier," CURTIS ALLEN DAVIS, VICTOR MIGUEL VIDAL, and LAZARO JESUS PEREZ,** has an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1344, or Title 18, United States Code, Section 1349, a conspiracy to commit violations of Title 18, United States Code, Sections 1344 or 1343, as alleged in this Indictment, each defendant shall forfeit to the United States any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation, pursuant to 18 U.S.C. § 982(a)(2)(A).

3.      The property which is subject to forfeiture includes, but is not limited to a personal money judgment in the sum of approximately $20,000,000, which sum represents proceeds obtained as the result of the commission of the offenses.

4. If any of the property described above, as a result of any act or omission of a defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p). Specifically, said substitute property may include the following:

1) the real property located at 1633 Tigertail Avenue, Miami, Florida, 33133; Folio: 01-4140-030-0010;

2) the real property located at 3400 SW 27 Avenue, Unit 2202, Miami, Florida, 33133, Folio: 01-4121-216-0400;

3) the real property located at 2155 NE 57 Street, Ft. Lauderdale, Florida, 33308, ID #: 4942 12 09 1890;

4) the real property located at 18 Fordham Street, Williston Park, New York, 11596, APN: 09192 00440;

5) the real property located at 21910 Hale Road, Land O Lakes, Florida;

6) Lot 44A Hampton Springs Resort, Hamburg Township, Jackson County, North Carolina, PIN # 7575-63-9888;

7)    Lot A, 1.02 acres, Mae Rabuffo Subdivision #1, Hamburg Township, Jackson County, North Carolina, PIN # 7575-81-7374;

8)    Lot C, 1.02 acres, Mae Rabuffo Subdivision #1, Hamburg Township, Jackson County, North Carolina, PIN # 7575-81-4434;

9)    Lot, 2.165 acres, Hamburg Township, Jackson County, North Carolina, PIN # 7575-71-9465;

10)    Lot 16A, 0.72 acres, Hampton Springs Resort, Hamburg Township, Jackson County, North Carolina;

11)    2006 Mercedes Benz, VIN: WDBRF52H26F835074;

12)    2007 Mercedes Benz, VIN: WDDNG71X57A109859;

13)    2007 Mercedes Benz, VIN: WDDNG71X97A070743; and

14)    1979 Porsche, VIN: 9119201820.

All pursuant to Title 18, United States Code, Section 982(a)(2)(A) and the procedures set forth at Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

DWAYNE EDWARD WILLIAMS
ASSISTANT UNITED STATES ATTORNEY

24

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

vs.

DOMENICO RABUFFO, et al.,

Defendants.

_____ /

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

| | | |
|---|---|---|
| New Defendant(s) | Yes _____ | No _____ |
| Number of New Defendants | _____ | |
| Total number of counts | _____ | |

**Court Division:** (Select One)

| | | |
|---|---|---|
| X | Miami | _____ Key West |
| _____ | FTL | _____ WPB _____ FTP |

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:     (Yes or No)     NO
   List language and/or dialect     _____

4. This case will take 11-20 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

| | (Check only one) | | | (Check only one) | |
|---|---|---|---|---|---|
| I | 0 to 5 days | _____ | | Petty | _____ |
| II | 6 to 10 days | _____ | | Minor | _____ |
| II | 11 to 20 days | X | | Misdem. | _____ |
| IV | 21 to 60 days | _____ | | Felony | X |
| V: | 61 days and over | _____ | | | |

6. Has this case been previously filed in this District Court?     (Yes or No)     No

   If yes:
   Judge: _____     Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?     (Yes or No)     No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____     District of _____

   Is this a potential death penalty case? (Yes or No)     X

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?     _____ Yes     X     No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?     _____ Yes     X     No

_____
DWAYNE E. WILLIAMS
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0125199

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: DOMENICO RABUFFO, a/k/a "Dom Rabuffo"

**Case No**: _____

Count #: 1

Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          30 years' imprisonment

Counts #: 2-15

Bank Fraud

Title 18, United States Code, Section 1344

**\*Max. Penalty:**          30 years' imprisonment

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: MAE RABUFFO

**Case No**: _____

Count #: 1

Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution

Title 18, United States Code, Section 1349

**\* Max. Penalty**:         30 years' imprisonment

Counts #: 5, 6, 8, 9, 10, 11, and 15

Bank Fraud

Title 18, United States Code, Section 1344

**\*Max. Penalty:**         30 years' imprisonment

Count #:

_____

_____

**\*Max. Penalty:**

Count #:

_____

_____

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: DIANE M. HAYDUK

**Case No**:

Count #: 1

Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          30 years' imprisonment

Counts #: 2, 3, 4, 5, 6, 7, 10, 11, 12 and 14

Bank Fraud

Title 18, United States Code, Section 1344

**\*Max. Penalty:**          30 years' imprisonment

Count #:



**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: RAYMOND E. OLIVIER, a/k/a "Ray Olivier"

**Case No**: _____

Count #: 1

Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          30 years' imprisonment

Counts #: 2, 3, 4, 7, 9, 11, 12 and 14

Bank Fraud

Title 18, United States Code, Section 1344

**\*Max. Penalty**:          30 years' imprisonment

Count #:

_____

_____

**\*Max. Penalty**: _____

Count #:

_____

_____

**\*Max. Penalty**: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: CURTIS ALLEN DAVIS

**Case No:**

Count #: 1

Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution

Title 18, United States Code, Section 1349

**\* Max. Penalty**:            30 years' imprisonment

Counts #: 10 and 14

Bank Fraud

Title 18, United States Code, Section 1344

**\*Max. Penalty:**            30 years' imprisonment

Count #:

**\*Max. Penalty:**

Count #:

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: VICTOR MIGUEL VIDAL

**Case No**:

Count #: 1

Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution

Title 18, United States Code, Section 1349

**\* Max. Penalty**:          30 years' imprisonment

Counts #: 6, 7, 8, 9, 10, 11, 12, 13 and 14

Bank Fraud

Title 18, United States Code, Section 1344

**\*Max. Penalty**:          30 years' imprisonment

Count #:


**\*Max. Penalty:**

Count #:



**\*Max. Penalty:**


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: LAZARO JESUS PEREZ

**Case No**:

Count #: 1

Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution

Title 18, United States Code, Section 1349

**\* Max. Penalty**:           30 years' imprisonment

Counts #: 6, 8 and 9

Bank Fraud

Title 18, United States Code, Section 1344

**\*Max. Penalty**:           30 years' imprisonment

Count #:



**\*Max. Penalty**:

Count #:



**\*Max. Penalty**:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**